Good morning. John DiStefano on behalf of Luis Javier Rosas-Castaneda. Before I begin on the merits of the appeal, I just wanted to bring to the Court's attention the status of the related appeal in the Almanza-Arenas case, which is at the center of this dispute, and urge that there is no reason to hold up a disposition of this case pending the outcome of that appeal. That appeal was stayed for a number of months. I believe the opening brief is finally coming due next week. It's unclear what the issues will be that are raised in that appeal or what the timing will be. And given that uncertainty and the fact that my client has been deported and is away from his family, I see no reason to hold up the disposition of this case. My position basically boils down to two principles. The first is that the Real ID Act exerts no effect on the burden of proof, as it always stood, on the alien to show eligibility for relief from removal. And the second principle is that if you accept the government's position and go the other way, you are inevitably fraught with arbitrary outcomes because there is no principled or congressionally prescribed or regulatory means to distinguish between one ambiguous record of conviction from another. The ---- Well, he still has the burden of proof, though. Is that correct? That is correct. Okay. Well, has he met his burden of proof when whatever he submits is not conclusive? Under the law of the circuit, the answer to that is yes. The Sandoval Lua case expressly holds that an alien meets his burden of proof by pointing to an inconclusive record of conviction with respect to relief from removal. That is the holding of that case. The government's position is that the Real ID Act undermines that holding by codifying the burden of proof. But that codification of the burden of proof works no change in the law. So I don't see how that alters the law of the circuit one bit. And this gets to the fundamental principles of the Taylor-Shepard analysis, because the entire analysis rests on the question of whether you have necessarily shown the presence of an aggravated felony. You only have to ---- you're only talking about necessarily showing the presence, not the absence. And if you haven't necessarily shown the presence, then from the alien's perspective, you've met your burden. And this conclusion is also supported by the difference in standards of proof that apply to the alien and the government. The government has a clear and convincing standard to meet, while the alien only has a preponderance standard. But that is the law of the circuit. And as far as the government's contention that the Real ID Act somehow changes that, it just doesn't find any support in the legislative history. It doesn't find any support in the text of the statute. And I think that the problems are further underscored by the fact that at each stage of this proceedings, we're seeing new arguments evolve to support the outcome in the immigration court. Before, under Almanza-Arenas and the reasoning of Almanza-Arenas itself, we heard that the corroboration provision of the Real ID Act is the reason that the burden has changed. On appeal, that position is a little bit muted. Instead, the government places most of its reliance on the burden of proof provision in the Real ID Act. But as I said before, that burden of proof provision simply codified the existing burden of proof, as it already stood with the alien. The other thing that the government raises anew at this stage of the proceedings is the argument that Nijuan basically changes the modified categorical approach as it applies in this case. But if you examine Nijuan and you examine Kawashima, the Ninth Circuit's interpretation of Nijuan, nothing is farther from the truth. Nijuan clearly states that you have two paths when it comes to interpreting the various predicate offenses under the immigration statute. One path you take when the federal statute only refers to the elements of the generic offense. And in that situation, you apply the classical Taylor-Shepard modified categorical or simply categorical analysis. The other path occurs when you have elements in the federal statute that are not present, that are not part of the crime itself. The example, I think, in Kawashima involved a crime of fraud where the amount of money involved was greater than $10,000. And since that $10,000 aspect is a fact-specific thing that doesn't refer to specific elements of generic state crimes, you need to then, you know, bring in some other evidence in the administrative proceeding. And as long as that evidence meets fundamentally fair procedures. Can we just back up one thing? You have no objection or you don't find fault if the IJA had asked him for, to corroborate testimony, verbal testimony. You have no problem with that, do you? That is correct. Uh-huh. And does Sanderville make that distinction itself? I don't believe it does, does it? No. So what is such a stretch between testimony which is oral and which is documentary? I mean, is it, and the IJA say, well, that's dubious. It's interesting. But what else have you got to prove your point, your burden of proof? Well, there are two answers to that. The first is the text of the statute. The corroboration provision of the statute begins in evaluating the testimony. Well, isn't the testimony, I testify about a document that I produce. And isn't that, I mean, isn't that sort of what I'm doing when I, you can't offer, you can't put a document into evidence unless you testify and the court receives it as authentic. And that's what you do when you testify, offering framing questions for the receipt of documentation. Well, Taylor and Shepard don't deal with documents that are credible or where credibility or authenticity or reliability is at issue in the same way that I think you're talking about, where, you know, at trial someone might corroborate what a given document stands for. Taylor and Shepard are dealing with what I would call legally operative documents, documents for which there is no extrinsic corroboration possible under the analysis itself. The judge gets these papers and he says, they look like forgeries to me. You know, I'm not, I don't believe these are what they purport to be. They look phony. Can the judge then say, go bring back, you know, go corroborate that they're authentic, not to the merits of what they say, but, you know, go corroborate their authenticity in some way? I don't know. That is not this case. That's not what happened here. There's no allegation that the documents are not authentic. I think when you're presented with authentic documents, they're documents where the authenticity is undisputed. That's what I'm getting at. If the judge assumes the documents are authentic, your point is that he can't then say, well, go, you know, these don't prove everything you have to prove, if that's what Sandoval Lewis says all you've had to do is produce these. Exactly. And there's no way to distinguish. I mean, if you've met your burden at that stage, then it's completely arbitrary to then, for in what case of one alien, say, go out and get more documents, and in the case of another alien to say you met your burden. I mean, and he has met his burden under Sandoval Lewis. I'd like to reserve the remainder of my time if I could. You got it. Thank you. Good morning. Good morning. My name is James Grimes, and I'm here on behalf of the Attorney General. Would you speak directly into the mic, please? Sure, Your Honor. How's that? Good. Better. All right. If I could follow up on some of the points my colleague has made, I think I'd like to refocus and point out that the only document that the immigration judge sought was a document that this Court said can be considered in applying the modified categorical approach. It just was talking about the plea transcript, which is something this Court has talked about in any number of cases, including Sandoval Lewis. And all the immigration judge did was identify a hole in Mr. Rose's evidence, give him notice of what he perceived to be that hole in his evidence, and then give him an opportunity to cure that hole. He gave him two chances to go out and find that plea transcript, and then when he came back for the third time and didn't have the transcript, he offered him another opportunity to go and obtain the transcript. Let's say we didn't have the Real ID Act. If we were still operating pre-Real ID Act, would petitioner win under Sandoval Lewis? Well, I think that's an interesting question. I mean, under the immigration judge's interpretation of the conviction documents, he would. The immigration judge perceived some sort of ambiguity in those documents. I'm not sure what that was. You could look at pages 131 to 138, where he seems to be relying on petitioner's argument in reliance on this Court's decision in Laval-Isia, but Laval-Isia was a solicitation case. Well, based on the documentation that was before the IJ, might he have been convicted of solicitation? No. Not now? No, Your Honor. If you look at the ---- Absolutely. Absolutely. It couldn't have gone based on the ---- Was it a possibility? Not a possibility. No, Your Honor. And I know that my colleague has made the argument about solicitation, about offer. The word offer is in the original complaint, but he wasn't convicted under that complaint. He was convicted under the amended charge, which solicited a plea transcript, and it doesn't say anything about solicitation or offer. What it says is he was convicted of attempted transportation for sale of two pounds of marijuana. So and the judgment says the same thing. And I know that Mr. Rosas ---- But the statute is broader. The statute is. That's right. So you would have to get to the modified categorical approach if you were applying that. And I know that Mr. Rosas has relied on this Court's decision in Navidad-Marcos, but Navidad-Marcos involves a California conviction, a California abstract of judgment, relies on California precedent about the problems with abstracts of judgment there. Here we have an Arizona conviction. We have the actual judgment signed by the actual judge. It's in the record of 272 to 274. Let me back up a little bit. Where does, according to the immigration judge, or I guess it's the government's position now, but where does the law come from that places a burden to produce that transcript on the applicant? It's the Real ID Act Burden of Proof provisions. All right. Now, is it your position that the Real ID Act Burden of Proof changed the existing law? It simply codified what the regulation was. And Sandoval-Lewis was not the existing law. Sandoval-Lewis came out after the Real ID Act was issued, but it didn't construe it. But it was after the regulation was out, long after the regulation. That's correct, Your Honor. So all it did was, in a sense, interpret that regulation, right? I think that, yes, that's true in a way. However, when this Court interprets a statute, this Court goes to the language of the statute to determine what congressional intent is. And when Congress uses language, this Court has to presume that Congress intended that language to have its common everyday understanding. How was the language of the statute different from the language of the regulation? The language of the statute is the same. This Court wasn't interpreting the statute or congressional intent. In fact, if you look at Sandoval-Lewis, the Court didn't explain what the term burden of proof means, didn't construe what congressional intent was, specifically didn't apply this statute. And that case also didn't involve a case in which the immigration judge gave the alien notice of the problem, gave him an opportunity to go out and clarify that issue. But we know what congressional intent under Supreme Court precedent, we have to presume that Congress intended the term burden of proof to mean what it has always meant, and that means ambiguities don't inure to the party with the burden of proof. May I ask you a practical question? I'm not sure how this works. Do I understand correctly that this fellow has already been deported? That's my understanding from my colleague's point of this morning. I wasn't aware of that. Okay. The issue before the BIA was whether he is eligible for cancellation of removal. That's right, Your Honor. If we were to agree with them, what happens? How does it happen? The case would be remanded to the board to determine whether or not he deserves that relief in the exercise of discretion. Because that was the issue. That issue was appealed by the service but wasn't addressed by the board. And if he is entitled to it, what happens? Do they bring him back or what? Practically, I'm not sure exactly how that would work. I think they would allow him to come back in if he were granted that form of relief. Does he get to come back to litigate his cancellation case if we were to agree with him? Well, the board would have to determine first. He would need to be here for the board to determine whether or not he deserves cancellation as a matter of discretion. It would only be if the board sent the case back to the immigration judge. If we were to say, look, he's statutorily eligible, you know, go do your thing, is he entitled to come back and litigate that? Not until the board determines that he needs to go back to the immigration judge because the board still has to determine whether or not he's eligible as a matter of discretion. So that issue would still be out there. That would still be a live issue if this court were to send the case back. But your bottom line is that based upon what was before the IJ, it was crystal clear he was not entitled to any relief. And the IJ, in effect, you're saying was helping him out, was throwing him a lifeline. He was drowning, and he threw him a lifeline. Look, go and get this additional thing, and maybe we could do business with you. Is that your position? Yes, Your Honor, it is. Because I think the immigration judge gave him the benefit of the doubt. And he certainly didn't give the government that opportunity. Well, there was no doubt. Your position is that he was losing, pure and simple, based upon what was before the IJ, because he didn't meet the burden of proof as to anything that was up in the air, that was solicitation of any kind, and that the IJ was helping him, saying, unless you get this, I'm going to have to rule against you. The immigration judge was helping him out. Well, with help like that, you know, he winds up getting deported. I mean, under Sandoval-Lewa, he doesn't have to do anything but prove that the documents are inconclusive. That's correct, Your Honor. Sandoval-Lewa controls that he would win. But under the REAL ID Act, we have to presume that Congress intended that the burden of proof mean that you cannot win with inconclusive evidence. So this whole thing then boils down to whether the REAL ID Act changes the ruling in Sandoval-Lewa, right? That's correct, Your Honor. And even though the language of the burden of proof is identical before and after your contention is that it changes it? That's right, Your Honor. You have an administrative interpretation of a statute that was not construed at all in Sandoval-Lewa. And under Supreme Court precedent, that administrative interpretation would have control if it's reasonable. It is reasonable because it's consistent with what the term burden of proof means. And the statute doesn't say anything about what you do with inconclusive evidence. And when you have congressional silence on that, that's when Chevron deference comes into play. And since the board's interpretation is consistent with what the term burden of proof has always meant. No, but don't we have to go back even further and decide when Congress adopted this provision of the IDEA Act, does it mean to change something from the identical, nearly identical language in the regulation, which has already been construed by the courts and which presumably Congress was aware, right? Isn't that the question? No, Your Honor. Congress wouldn't have been aware of that because Sandoval-Lewa came out two years after the real IDEA Act was passed. So you would have to start with the plain language of the statute, and in construing the plain language of the statute, you follow the presumptions that the Supreme Court has described in Arbery, such as Netter. No, no, no. But it's still the plain language. But don't we have to first figure out, well, did Congress intend to change something? I mean, why would they adopt the identical language of a regulation, which, you know, except to perpetuate it? I think that's right. It's done quite commonly, right? I think that's right, Your Honor. But Congress would have had no idea that this Court was going to say in Sandoval-Lewa two years later that inconclusive evidence can carry a burden of proof. I'm not aware of any other context in which inconclusive evidence would carry a party's burden of proof. That normally means the party needs more evidence. We wouldn't charge a jury with the instruction if you find a defendant has presented inconclusive evidence as to defense, you should rule it for the defendant. That's just not how that would work. There is another context in which that works, and that's what Congress sets the universe in which Congress is operating when it enacted that language. Almanza-Arenas simply recognizes the burden of production scheme that exists in any civil case and that is created by the statute and the regulation in this case. And that's if there's evidence out there that will prevent a party from meeting its burden of proof, the party has to negate that evidence. And there's one other point I'd like to make is that Mr. Rosas has suggested in his brief that the government couldn't obtain this evidence. If you look at pages 131 to 138 of the record, you can see there that DHS counsel realized he was going to need this evidence, or he might need it, and he wanted more time to obtain the plea transcript. And the immigration judge, responding to Mr. Rosas' objection at pages 134 to 137, denied the government that opportunity, sustained the objection, and said you simply haven't shown that he is removable for an aggravated felony. He then turned around, identified that problem for Mr. Rosas, and gave him the opportunity to correct it. I think if the court were to hold otherwise, you'd be suggesting that immigration judges shouldn't identify problems in evidence for an alien, give them the opportunity to clear that up. It's a problem only if he doesn't win on an ambiguous record, right? That's right, Your Honor. Of course, there is the issue that Judge Fowler and I were discussing. We're down to the same question. It's hard to say why the immigration judge found that this was ambiguous. He did, so that's the record we have. Fair enough. Thank you very much. I would quickly just address two points. First, the idea that the solicitation offense or that the record of conviction is not ambiguous, really if you examine the conviction record, first of all, and the record in the case, this issue was not challenged by the government before the BIA. The BIA did not comment on it. And when you look at the documents themselves, what you have is what Sandoval Lua identified as being a classically ambiguous charge. It merely lists the plea agreement merely lists the convicting statute and describes the crime. And when the crime itself is overbroad, as Section 13-3405 is in this case, and I think Sandoval Lua confirms that as well under the analogous California statute, then there can be no argument that the record of conviction is conclusive. The other point that I'll get back to is as far as meeting a burden of proof with an inconclusive record. I mean, first of all, there are many contexts where proof is far from conclusive, and that's why we have juries and things. But the more basic point is that in the modified categorical context under Taylor and Shepard, an inconsistent record does carry the burden because it doesn't necessarily show the presence of a conviction, and that's the only inquiry that's relevant. I mean, as an equitable matter, you're talking about proving a negative, proving the absence of a conviction, proving innocence, which is actually likewise abhorrent to our system of justice. Thank you, Mr. DiStefano. Mr. Grimes, thank you, too. The case just argued is submitted. Mr. DiStefano, if I recall correctly, you were appointed to this case on a pro bono basis. That's correct. We want to thank you very much for taking it and for handling it so ably. Thank you. The case is submitted.
judges: Cowen, Tashima, Silverman